# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SERGEI BOISSIER**                                        **CIVIL ACTION**

**VERSUS**                                                       **CASE NO. 14-2785**

**KARA T. KATSUR,**                                      **SECTION: "G"(2)**
**ABC INSURANCE CO.**

## ORDER AND REASONS

Before the Court is Defendant Kara T. Katsur's ("Katsur") "Motion to Dismiss and/or to Set Aside Default Judgment and/or Motion for New Trial,"[1] wherein Katsur requests that the Court dismiss the claims of Plaintiff Sergei Boissier ("Boissier"), set aside the Court's prior entry of default judgment in favor of Boissier, grant a new trial, or some combination thereof. Katsur seeks relief pursuant to Federal Rules of Civil Procedure 55(c), 60(b), and 59(a). Boissier opposes the motion.[2] Having reviewed the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the pending motion.

## I. Background

### A.    *Factual Background*

Boissier is the owner of a house located at 833 Esplanade Avenue, New Orleans, Louisiana 70116.[3] In his complaint, Boissier alleged that on or about April 8, 2014, he entered into a verbal contract with Katsur, where she agreed to renovate certain bathrooms in his house in exchange for $40,000.[4] Boissier further alleged that Katsur agreed to complete the renovation project by the time

---

[1] Rec. Doc. 31.

[2] Rec. Doc. 32.

[3] Rec. Doc. 1.

[4] *Id.* at 2.

Boissier returned from an out of town vacation on August 22, 2014.[5] According to Boissier, before he left New Orleans, he signed and post-dated several checks made out to Katsur amounting to $40,000.[6] Boissier alleged that upon his return on August 22, 2014, he discovered that Katsur had made very little progress on the renovation project, performing some demolition and removal of the pre-existing bathrooms.[7] Boissier further alleged that Katsur also had begun some demolition or removal of parts of the house that were outside the scope of the project and the agreement, including removal of weatherboards and siding, which left some of the structure of the house exposed to rain and other elements.[8] According to Boissier, despite the fact that Katsur had completed very little work, she had cashed all of the checks that Boissier had left.[9] Boissier alleged that he terminated Katsur's services on September 22, 2014, after giving her an additional 32 days and $1,000 in cash to complete the renovation project.[10]

**B.    *Procedural Background***

On December 9, 2014, Boissier filed a complaint asserting claims against Katsur and Katsur's insurance company, a fictitious defendant, for breach of contract, negligence and bad faith breach of obligations.[11] Boissier claimed damages consisting of: "1) the $41,000.00 he paid Katsur for unfulfilled obligations; 2) the additional costs that Mr. Boissier will have to pay another

---

[5] *Id.*

[6] *Id.*

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 3–4.

contractor to fix Katsur's faulty work, including the damages from the unauthorized demolition; and 3) the court costs and attorney's fees for bringing this action as a result of Katsur's negligence and bad faith."[12]

On December 7, 2015, Boissier filed an executed summons as to Katsur, stating that a server of process delivered the summons to a "Jane Doe" of suitable age and discretion at Katsur's residence in New York on December 2, 2015.[13] An attached affidavit also indicates that the server of process mailed Katsur a copy of the service documents the day after personally delivering them to the "Jane Doe."[14] On December 28, 2015, Boissier filed a Motion for Entry of Default.[15] On January 6, 2016, the Clerk of the Court entered default against Katsur.[16] On January 6, 2016, Boissier filed a Motion for Default Judgment.[17] On February 1, 2016, the Court granted Boissier's motion and rendered judgment against Katsur for the following damages: the sum of $86,000.00, plus the filing fee cost in the amount of $400.00, costs of service in the amount of $710.00 and interest according to law from the date of the judgment until the entire amount is paid.[18] In rendering judgment against Katsur, the Court found that it had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and specific personal jurisdiction over Katsur.[19] The Court also found that it appeared on the

---

[12] *Id.* at 5.

[13] Rec. Doc. 19.

[14] *Id.*

[15] Rec. Doc. 22.

[16] Rec. Doc. 24.

[17] Rec. Doc. 25.

[18] Rec. Doc. 28.

[19] *Id.* at 6–12.

record that Katsur had been properly served with process.[20]

On February 22, 2016, Katsur filed an "Answer, Affirmative Defenses, Counterclaim."[21] On February 25, 2016, Katsur filed the instant motion seeking relief from the Court's default judgment.[22] Boissier filed his opposition to the instant motion on March 8, 2016.[23]

## II. Parties' Arguments

### A.   *Katsur's Arguments in Support of Relief from Default Judgment*

Katsur seeks relief from the Court's default judgment on the grounds that: (1) Boissier did not sufficiently serve Katsur with process in accordance with Federal Rule of Civil Procedure 4(m); (2) there is good cause for setting aside the judgment in accordance with Rules 55(c) and 60(b)(1); and (3) there are grounds for granting "a new trial pursuant to Rule 59(a)."[24]

Katsur asserts a number of facts in support of her argument that service was improper. Absent proper service, Katsur contends that this Court lacks jurisdiction over her, voiding the default judgment.[25] Katsur emphasizes that "proper personal service (domiciliary) was not effectuated upon the defendant for well over the Rule 4(b) 120 period."[26] Katsur acknowledges that she received Boissier's service of process documents from a co-tenant, Tracee Trax ("Trax"), but argues neither she nor Trax were personally served and instead that Trax found the documents in a community

---

[20] *Id.*

[21] Rec. Doc. 30.

[22] Rec. Doc. 31.

[23] Rec. Doc. 32.

[24] Rec. Doc. 31-1 at 2.

[25] *Id.* at 4 (citing *Conwill v. Greenberg Taurig, L.L.P.*, 2009-4365, 2010 WL 2773239, at *3 (E.D. La. July 13, 2010) (Africk, J.).

[26] *Id.*

mailbox.[27] Katsur asserts that neither personal nor domiciliary service was effectuated properly upon her or her co-tenant.[28] Katsur relies on her own affidavit in support of this assertion, which states that the co-tenant found the summons and complaint in a community mailbox.[29] Therefore, she asserts that both the entry of default and default judgment are void as a matter of law.[30]

Addressing good cause for setting aside the default judgment, Katsur contends that "she did not understand the importance of responding to the summons within the time delays."[31] Katsur asserts that she underwent a "very significant surgery" on November 12, 2015, requiring one month of rehabilitation during which she "experienced a plethora of emotional problems which compounded her ability to understand the time constraint consequences of the summons and complaint."[32] In her affidavit, Katsur states "[i]nasmuch as I have not been involved in litigation before, I did not understand the importance of responding to the summons to the complaint within the time delays."[33] Katsur argues that "at most" she was neglectful, but that she did not willfully disregard the timeliness requirements of the summons.[34]  Counsel for Katsur contends that she "originally consulted with . . . counsel in the latter part of December 2015," then formally hired

---

[27] *Id.* at 4–5, 7.

[28] *Id.* at 9.

[29] *Id.*; Rec. Doc. 31-2 at 2.

[30] Rec. Doc. 31-1 at 9 (citing  Fed. R. Civ. P. 55).

[31] *See id.* at 4–5.

[32] *Id.* at 5.

[33] Rec. Doc. 31-2 at 2.

[34] Rec. Doc. 31-1 at 5.

counsel in early February 2016.[35] Counsel for Katsur asserts that he quickly stepped into action as soon as he found out that an entry of default and default judgment had been entered against Katsur.[36] Katsur further contends that Boissier will not be prejudiced by having the default judgment set aside.[37]

Katsur relies on two prior decisions from this Court setting aside an entry of default.[38] She asserts that her default was not willful because she was not properly served.[39] Additionally, Katsur contends "while she may have been grossly incompetent or neglectful in her handling of the summons and complaint, once she learned that an entry of default and/or default judgment had been entered she quickly hired undersigned counsel and attempted to expeditiously set aside these defaults."[40] "Given the Fifth Circuit's policy in favor of resolving cases on the merits, [Katsur] urges this Court to utilize its discretion to vacate the entry of default as well as default judgment."[41] Moreover, even assuming that service of process was proper, Katsur asserts that the Court should not speculate as to what caused her to fail to timely answer the complaint because doubts are to be

[35] *Id.* at 2.

[36] *Id.* at 5.

[37] *Id.* at 6 (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) ("There is no prejudice to the plaintiff where 'the setting aside of the default judgment has done no harm to plaintiff except to require it to prove its case . . . All that . . . has been done is to give the defendants their day in court.'").

[38] *Id.* at 3, 9, 11 (citing *SnoWizard v. Robinson*, 2011-515, 2012 WL 1748154, at *1 (E.D. La. May 16, 2012) (Brown, J.); *Marshall v. State of La.*, 2015-1128 (E.D. La. Sept. 22, 2015) (Brown, J.)).

[39] *Id.* at 13.

[40] *Id.*

[41] *Id.* (citing *In re: OCA*, 551 F.3d 359, 370 (5th Cir. 2008); *Oddo v. Homecoming Fin. LLC*, No. 06-6888, 2007 U.S. Dist. Lexis 29713, 5–6 (E.D. La. Apr. 20, 2007) (Zainey, J.)).

resolved in favor of a trial on the merits.[42] Katsur contends that she "took that action to respond once [she] learned of the legal significance of the default."[43]

Katsur avers that Boissier will suffer no prejudice by the setting aside of the default judgment because no action has been taken in this litigation since the default.[44] She argues that "a delay in providing responsive pleadings alone does not constitute prejudice and that at the time she filed her motion to set aside the judgment, no substantive action has occurred on [Boissier's] complaint."[45] Lastly, she asserts that Boissier suffered no prejudice because she filed the motion to set aside the default judgment in the early stages of this litigation.[46]

Finally, Katsur contends that her February 22, 2016 answer and counterclaim to Boissier's complaint shows that Katsur has a meritorious defense and could possibly prevail at trial.[47] Alternatively, Katsur moves for a new trial in accordance with Federal Rule of Civil Procedure 59(a) on the grounds that good cause compels a rehearing of this issue.[48]

**B.    *Boissier's Arguments in Opposition***

In opposition to Katsur's motion, Boissier contends that Katsur was in fact properly served with process and that Katsur was willful in failing to timely respond to Boissier's complaint.[49]

---

[42] *Id.* (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)).

[43] *Id.*

[44] *Id.* at 15.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 15–16.

[48] *Id.* at 17.

[49] Rec. Doc. 32.

Boissier contends that Katsur had been evading service for most all of 2015, had actual notice of the lawsuit, and had already received the advice of counsel before the time for filing responsive pleadings expired.[50] Boissier contends that Katsur was provided a "clear warning that Mr. Boissier was proceeding with obtaining a judgment."[51] Katsur, however, "chose not to retain counsel or respond to the lawsuit despite the passage of 2 months from the date of service."[52]

Boissier asserts that he first attempted to serve Katsur with service of process by certified mail in January 2015; however, that mail was returned and marked as "refused" two weeks later.[53] Boissier contends that he then hired a New York process service firm and attempted to personally serve Katsur both in New York and New Orleans without success.[54] In November 2015, the process service firm tried to serve Katsur again, either by personal service or "mail and nail" service under New York law.[55] Boissier contends that the affidavit of the process server shows that service was effected on December 2, 2015, and that Katsur's roommate refused to give her name to the process server, so the process server instead noted the roommate's basic physical features.[56] Boissier contends that Katsur's version of how service was improperly effected is supported only by Katsur's hearsay description of the experience of the roommate and not with an affidavit from the roommate

---

[50] Rec. Doc. 32 at 1.

[51] *Id.*

[52] *Id.*

[53] *Id.* at 2. Boissier notes that he attempted to file notice that service had been accomplished in accordance with Louisiana law, but that the Court, Judge Berrigan presiding, ruled out of caution that service was not effected. *See id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* at 2, 7.

herself.[57] Furthermore, Boissier emphasizes that Katsur does not deny actually receiving the summons.[58]

Boissier provides an exhibit of a December 17, 2015 fax received by his counsel from counsel for Katsur, stating that Katsur's counsel was evaluating the litigation to determine if he would "be able to assist Ms. Katsur" and asking Boissier's counsel for "an additional 30 days in which to review all relevant documents."[59] Boissier also provides an exhibit of a December 23, 2015 email exchange between his counsel to counsel for Katsur stating that Boissier "has not agreed to an extension."[60] Boissier emphasizes that Katsur did not need Boissier's permission to seek an extension of time to file a responsive pleading.[61] Boissier also exhibits letters apparently sent to Katsur's address in New York informing her that Boissier had filed a motion for entry of default and default judgment.[62]

Finally, Boissier disputes that he will not be prejudiced by the Court setting aside the default judgment and disputes that Katsur has presented a meritorious defense.[63]

### III. Law and Analysis

**A.** *Legal Standard on a Motion to Set Aside Default Judgment*

Rule 55(c) of the Federal Rules of Civil Procedure provides that the Court "may set aside

---

[57] *Id.* at 7.

[58] *Id.*

[59] *Id. See also* Rec. Doc. 32-1 at 1.

[60] *Id.* at 2.

[61] Rec. Doc. 32 at 10.

[62] Rec. Doc. 32-1 at 7–8.

[63] *Id.* at 12.

an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."[64]

Here, the Court entered a final default judgment against Katsur.[65] Accordingly, Rule 60(b) applies.[66]

That Rule states, in pertinent part:

> (b)      Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1)      mistake, inadvertence, surprise, or excusable neglect;
> >
> > (2)      newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> >
> > (3)      fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> >
> > (4)      the judgment is void;
> >
> > (5)      the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> >
> > (6)      any other reason that justifies relief.

In considering which of Rule 60(b)'s enumerated grounds for relief might apply, the Fifth Circuit instructs that "[t]he first five clauses of Rule 60(b) and the sixth are mutually exclusive."[67]

---

[64] Fed. R. Civ. P. 55(c). *See also Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 495–96 (5th Cir. 2015).

[65] Rec. Doc. 28.

[66] Katsur also generally asserts that she seeks relief pursuant to Rule 59(a). However, that rule applies only if a trial has actually been conducted and not to situations in which default or summary judgment was granted. *See Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 748 n. 9 (5th Cir. 2006); *Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785 & n. 1 (5th Cir. 1996); *United States v. $10,000.00 in United States Funds*, 52 F.3d 329, 1995 WL 216871, *2 n. 5 (7th Cir. 1995). Some courts have construed Rule 59(a) motions as motions filed pursuant to Rule 59(e). *Piazza's Seafood,* 448 F.3d at 748 n. 9. However, Katsur makes no argument that the judgment should be altered or amended under to Rule 59(e).

[67] *Hess v. Cockrell*, 281 F.3d 212, 215 (5th Cir. 2002).

10

In other words, if relief is available on the grounds set forth in clauses (b)(1) to (b)(5), relief is not available pursuant to clause (b)(6).[68] Therefore, Rule 60(b)(6) has been described as a "residual clause used to cover unforeseen contingencies," and as "a means for accomplishing justice in exceptional circumstances."[69]

   In general, Rule 60(b) is a "grand reservoir of equitable power to do justice in a particular case."[70] The Rule "attempts to strike a balance between two conflicting goals, the finality of judgments and the command of courts to do justice."[71]  Toward that end, motions under the Rule are "directed to the sound discretion of the district court."[72] The Fifth Circuit has set forth eight factors that guide the Court's discretion on a Rule 60 motion. These are:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether—if the judgment was rendered after a trial on the merits—the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.[73]

Comparing Rule 55(c)'s provisions for setting aside entries of default and Rule 60(b)'s

---

[68] *Gulf Coast Bldg. & Supply Co. v. Intern. Broth. of Elec. Workers, Local No. 480, AFL-CIO*, 460 F.2d 105, 108 (5th Cir. 1972) (noting that "[w]here either Clauses (b)(1), (2), (3), (4), or (5) provide coverage for the movant's claim, relief may not be obtained pursuant to Clause (b)(6).").

[69] *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007).

[70] *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981).

[71] *Stipelcovich*, 805 F.2d at 604.

[72] *Id.*

[73] *Seven Elves,* 635 F.2d at 402 (citations omitted).

provisions for final default judgments, the Fifth Circuit has stated that a motion to set aside an entry of default "is more readily granted than a motion to set aside a default judgment."[74] A district court's refusal to set aside a default judgment is reviewed for abuse of discretion, with any factual determinations underlying the district court's decision reviewed for clear error.[75] Nevertheless, the Fifth Circuit has stated that, "because of the seriousness of a default judgment, and although the standard of review is abuse of discretion, even a slight abuse of discretion may justify reversal."[76] A district court's use of discretion should balance the policy interest in favoring resolution of cases on the merits, with considerations of "social goals, justice and expediency."[77]

## B.    Service of Process

Though the Court has previously satisfied itself that Katsur received appropriate service of process, the Court revisits the issue to address Katsur's argument that the Court's default judgment cannot stand for lack of proper service of process. Indeed, were the Court to find that Katsur had not been properly served, the Court would be obliged to set aside its default judgment as void pursuant to Rule 60(b)(4).[78] Without denying that she received the summons and complaint, Katsur contends service was not proper, because Boissier's server of process left the summons and complaint in a "community mailbox" instead of personally serving Katsur or Katsur's co-tenant Trax.[79]

---

[74] *In re OCA*, 551 F.3d 359, 370 (5th Cir. 2008).

[75] *Wooten*, 788 F.3d at 495.

[76] *Id.* (quoting *In re Chinese-Manu. Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014)).

[77] *Id.*

[78] *Rogers v. Hartford Life and Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999)  ("When a district court lacks jurisdiction over a defendant because of improper service of process, the default judgment is void . . . .").

[79] Rec. Doc. 31-2.

Rule 4(e)(2)(B) of the Federal Rules of Civil Procedure allows service of process to be made by "leaving a copy of [the summons and the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." In *Nowell v. Nowell*, the Fifth Circuit held that service upon the resident manager of the defendant's apartment complex was proper.[80] The court held that Rule 4's "provision concerning usual place of abode should be liberally construed to effectuate service if actual notice has been received by the defendant" and that this question is to be "consider[ed] . . . from a practical standpoint."[81] Applying this rule, district courts have held that service was proper on a defendant's wife at her parent's home,[82] and on the defendant's boyfriend at her boyfriend's home.[83]

As Boissier points out, Katsur's contention that Trax was not personally served is supported only by inadmissible hearsay statements by Katsur. Even ignoring the hearsay implications of Katsur's statement that Trax did not personally receive the summons and complaint, Katsur's statement can be further discounted as too general and conclusory to effectively countervail the affidavit of Boissier's process server. The process server's affidavit supplies particularized facts as to the person who received the summons and complaint at Katsur's address, both as to the person's physical appearance and the person's refusal to provide her name. Katsur presents no evidence to support an inference that Boissier's server provided an unreliable account or otherwise misstated the circumstances surrounding the personal service of process.

---

[80] 384 F.2d 951, 952 (5th Cir. 1967).

[81] *Id.* at 953.

[82] *DeFrancis v. Bush*, 859 F.Supp. 1022, 1023 (E.D. Tex. 1994).

[83] *Howard v. Shelton*, 277 F.R.D. 168, 170 (S.D. Miss. 2011).

Furthermore, Katsur's contention that a copy of the summons and complaint were left in the community mailbox does not conflict with the server's affidavit, which indicates that the server not only personally delivered a copy of the service documents, but also mailed a copy of the documents to Katsur the day after effecting personal service.[84] Finally, Katsur does not dispute that she received the summons and complaint, meaning the Court can readily conclude that Katsur had actual notice of the suit. Viewing the matter practically and in light of Katsur's actual notice, the Court concludes that Boissier satisfied the service standards set forth by the Fifth Circuit in *Nowell*. As such, the Court will not set aside its default judgment as void for improper service.

Additionally, Katsur argues that this case should be dismissed for insufficient service of process. Federal Rule of Civil Procedure 4 governs service of process generally, and Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service.[85]

The burden is clearly on the plaintiff to show good cause as to why service was not effected timely,[86] and the plaintiff must demonstrate "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not

---

[84] Rec. Doc. 19.

[85] Rule 4(m) was amended on December 1, 2015 to shorten the time for service from 120 days to 90 days. However, because this Complaint was filed prior to the changes going into effect, it is governed by the older version of the rule. *See* Chief Justice Kurt D. Engelhardt, *General Order—Effecting Service and Issuance of Scheduling Orders* (Dec. 2, 2015), http://www.laed.uscourts.gov/news/general-order-effecting-service-and-issuance-scheduling-orders.

[86] *McGinnis v. Shalala*, 2 F.3d 548, 550 (5th Cir. 1993).

suffice."[87]  Nonetheless, the Court has discretion under Rule 4(m) to extend the time for service even in the absence of good cause.[88]

The Court previously extended the time for service pursuant to Rule 4(m). On March 12, 2015, the Court issued a show cause order requiring Boissier to show cause on or before April 8, 2015, as to why the case should not be dismissed for Boissier's failure to serve Katsur.[89] On April 8, 2015, the Court passed on the call docket 60 days, giving Boissier additional time to serve Katsur.[90] The Court issued another show cause order on August 7, 2015,[91] and on September 9, 2015, the Court again granted Boissier an additional 60 days to serve Katsur.[92] Finally, on November 18, 2015, the Court issued a show cause order requiring Boissier to show cause on or before December 11, 2015, as to why Katsur had not been served.[93] On December 14, 2015, the Court found that the call docket had been satisfied because a return of service of summons was filed into the record.[94]   As discussed above, the Court finds that the December 2015 service was proper. Accordingly, the Court denies Katsur's motion to dismiss for insufficient service of process.

---

[87] *Gartin v. Par Pharm. Cos. Inc.*, 289 F. App'x 688, 692 (5th Cir. 2008) (quoting *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995)).

[88] *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013); *see also Newby v. Enron Corp.*, 284 F. App'x 146, 149 (5th Cir. 2008).

[89] Rec. Doc. 7.

[90] Rec. Doc. 12.

[91] Rec. Doc. 13.

[92] Rec. Doc. 14.

[93] Rec. Doc. 17.

[94] Rec. Doc. 21.

## C.      Good Cause Under Rule 60(b)(1)

Even though the Court has found that service was proper in this case, the Court may still set aside its default judgment for good cause shown by Katsur pursuant to Rule 60(b)(1).[95] In *Wooten v. McDonald Transit Association, Inc.*, the Fifth Circuit recently summarized the appropriate method of analysis for evaluating a request for relief under Rule 60(b)(1).[96] A court examines three factors: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented."[97] "The defendant has the burden of showing by a preponderance of the evidence that its neglect was excusable, rather than willful.[98] "A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'"[99] There, the Fifth Circuit affirmed the district court's denial of the defendant's motion to set aside a default judgment, finding the defendant's arguments that service was not properly executed and it "rushed to court as soon as it learned the district court had entered a default judgment against it" insufficient to meet its burden of showing that the default was not willful.[100]

Here, Katsur received actual notice of Boissier's suit at some point in early December 2015.[101] The record supports that Katsur actively sought the assistance of an attorney in New Orleans

---

[95] *See Matter of Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992).

[96] *Wooten*, 788 F.3d at 500 (citing *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008)).

[97] *Id.*

[98] *Id.* at 501–02.

[99] *Id.* at 501 (quoting *Lacy*, 227 F.3d at 292).

[100] *Id.*

[101] Boissier also contends that Katsur actively evaded service of process after effectively receiving actual notice of the suit in January 2015. *See* Rec. Doc. 32 at 5–7. The Court will not address this issue because it is unnecessary to do so. However, it notes that Katsur has not responded to this contention.

soon thereafter. Indeed, counsel for Katsur reached out to counsel for Boissier before the time period

for responsive pleadings expired. Katsur apparently either made a decision not to hire counsel or,

at the very least, decided the situation was not pressing enough to engage counsel. She did this

despite a simple, clear, and unambiguous warning in the single-page summons that she had twenty-

one days after service to answer Boissier's complaint and that failing to do so would mean that a

"judgment by default will be entered against you for the relief demanded in the complaint."[102]

Furthermore, the emails and letters exhibited by Boissier strongly indicate that Katsur was put on

repeated notice that Boissier was actively pursuing judgment against Katsur.

Yet neither Katsur, nor her counsel, made any appearance before the Court until February

22, 2016. Even assuming that Katsur did not receive actual notice of Boissier's lawsuit until

December 17, 2015, the date that Katsur's counsel contacted Boissier's counsel to request an

extension,[103] the fact remains that Katsur waited 60 days after receiving actual notice of Boissier's

suit before making any contact with the Court.

Beyond her statements that she underwent a medical procedure roughly one month before

service was effected and that she did not understand the importance of responding to the complaint,

Katsur offers nothing approximating a valid excuse for failing to timely answer Boissier's complaint

or otherwise appear before or contact the Court. Katsur received actual notice of the lawsuit,

promptly consulted with counsel, and offers no argument disputing Boissier's contention that she

received notice and copies of both Boissier's motion for entry of default and default judgment.

Katsur sets forth no evidence refuting Boissier's supported contention that his counsel

---

[102] *See* Rec. Doc. 19.

[103] The letter from Katsur's counsel to Boissier's counsel unambiguously reflects that Katsur had notice of the suit by this date. *See* Rec. Doc. 32-1 at 1.

unambiguously conveyed Boissier's intent to pursue his available legal remedies to both Katsur and Katsur's counsel. Based on the foregoing, the Court concludes that Katsur has not shown by a preponderance of the evidence that her failure to timely file responsive pleadings was excusable. Instead, the Court finds that Katsur's failure to timely respond was willful.

The Court's finding that Katsur's default was willful "ends the [good cause] inquiry," making it unnecessary for the Court to determine the prejudice to Boissier or whether Katsur's answer and counterclaim present a meritorious defense.[104] Accordingly, the Court finds that Katsur is not entitled to relief pursuant to Rule 60(b)(1).

### D.    *Equitable Relief Under Rule 60(b)(6)*

Although Katsur does not explicitly invoke the provisions of Rule 60(b)(6)—which gives courts the equitable authority to set aside default judgment for reasons not explicitly listed in Rule 60(b)[105]—the Court nonetheless emphasizes that it does not appear that relief under that provision would be appropriate in this case. The "grand reservoir of equitable power" resting in Rule 60(b)(6) is to be used sparingly and only under extraordinary circumstances.[106] In *Wooten*, the Fifth Circuit found Rule 60(b)(6) relief inappropriate where the stated reasons for equitable relief were themselves grounds for relief under the other provisions of Rule 60(b).[107] The *Wooten* court made clear that relief under Rule 60(b)(6) is appropriate only when the party seeking relief can demonstrate extraordinary circumstances wholly unaddressed by the rest of Rule 60(b)'s provisions. Katsur's arguments for relief clearly go to the "excusable neglect" provision of Rule 60(b)(1) and

---

[104] *Wooten*, 788 F.3d at 500.

[105] *Id.* at 501.

[106] *Id.* (citing *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005).

[107] *Id.* at 502.

voiding provision of Rule 60(b)(4), meaning there are no clear grounds for setting aside the default

judgment pursuant to Rule 60(b)(6).

### IV. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Katsur's "Motion to Dismiss and/or Motion to Set Aside

Default Judgment and/or Motion for New Trial[108] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this ___30th___ day of March, 2016.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[108] Rec. Doc. 31.